

SIGNED THIS 17th day of June, 2019

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| IN RE: | |
| | CHAPTER 7 |
| JAMES EUGENE YOUNG | |
| | CASE NO. 18-71543 |
| Debtor. | |
| LARRY TOLBERT | |
| Plaintiff | |
| v. | Adv. Proc. No. 18-07045 |
| JAMES EUGENE YOUNG | |
| Defendant. | |

## MEMORANDUM OPINION

James Eugene Young ("Young") filed a voluntary Chapter 7 petition in this Court on November 14, 2018. Young listed the Plaintiff herein, Larry E. Tolbert ("Tolbert"), as an unsecured creditor on Schedule E/F with a claim in the amount of $9,726.22 based on a civil judgment arising from a "real estate default." On November 29, 2018, Tolbert commenced this Adversary Proceeding, *pro se*, by filing a Complaint objecting to the dischargeability of the debt

owed by Young and alleging that Young made false oaths on his bankruptcy schedules and tax returns. At issue is whether damages arising from an alleged breach of contract and costs of repair of damages to property are excepted from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6), respectively, and whether Young made false statements pursuant to 11 U.S.C. § 727(a)(4)(A), thereby justifying a denial of discharge. On May 29, 2019, the Court conducted a full evidentiary bench trial; at the conclusion of which, the Court took the matter under advisement.[1] For the reasons set forth below, the Court will deny the requested relief.[2]

## JURISDICTION AND VENUE

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this Court pursuant to 28 U.S.C. § 1408.

## FINDINGS OF FACT

This case presents yet another non-dischargeability dispute over damage to residential property once an occupant vacates. Recently, the Court has tried and issued opinions in two different landlord-tenant disputes involving damages to rental property, where the landlord has attempted to hold the tenants responsible for the condition of the property in a non-dischargeability proceeding after the tenants vacated the property and later filed for bankruptcy.

---

[1] On June 3, 2019, Tolbert filed a Motion to Present Additional Evidence. (ECF No. 34.) Tolbert used a substantial majority of the time budgeted for trial presenting his evidence, and at the trial's conclusion, he declined when asked whether he wanted to present any additional evidence. Recognizing his *pro se* status, and having already provided a full and fair opportunity to present his case, this Court will deny Tolbert's motion.
[2] At the conclusion of Tolbert's case, counsel for Young made an oral motion for judgment, which the Court took under advisement. Because the Court has reached a decision on the merits, it declines to rule on Young's motion.

In this Court's experience, these cases often become personal, and to say Tolbert, the plaintiff in this case, has hard feelings toward Young, the debtor, is an understatement.[3] The Court's views on such matters are well known. *See Hinty v. Horton (In re Horton),* No. 18-70177, A.P. No. 18-07013, 2018 WL 4220786 (Bankr. W.D. Va. Aug. 21, 2018), *Pence v. Carr (In re Carr),* No. 16-71500, A.P. No. 17-07006, 2017 WL 4685034 (Bankr. W.D. Va. Oct. 17, 2017).[4] This case is a bit different, involving a sale of a residence to a couple who later separated and vacated the property. However, the elements of a viable non-dischargeability claim for willful and malicious damage to property under 11 U.S.C. § 523(a)(6) remain the same.

In September 2015, Tolbert conveyed a General Warranty Deed for property located at 2325 Washington Street, Bluefield, West Virginia (the "Property") to Young and his wife, Tracey ("Tracey"). (Ex. 2, ECF No. 27, at 5.) The Property included a main house where Young resided with Tracey and their three children, and an additional smaller house that Young rented out to a third party for $300 per month. In exchange for the deed, Young and Tracey executed a real estate note and a deed of trust ("DOT")[5] for the Property agreeing to repay Tolbert the sum of $65,500 in the form of two principal payments of $2,000 due in March 2016 and March 2017 with monthly payments of $500 until the note was paid in full. (Exs. 2–4, ECF No. 27, at 5–9.) Additionally, the DOT stipulated that Young and Tracey would pay property taxes each year. (Ex. 2, ECF No. 27, at 6.)

---

[3] Tolbert has been relentless in pursuing the debtor both inside and outside of bankruptcy. A voicemail message Tolbert left for Young prior to bankruptcy illustrates the general tenor of this case. In that voicemail, played at trial, Tolbert stated, "[m]y feeling is, I think you guys are robbing the place and taking away things that, uh, are not yours. And uh, I'm telling you, you guys, uh, are going to pay, because you are going to even up. See uh, me or my son will follow you or Tracey to the gates of hell to get back at you. So, you better make it right." (Ex. A, ECF No. 24, at 4.).
[4] The Court advised the parties of these opinions at the initial pre-trial conference in this case.
[5] The parties also executed an amendment to the DOT. For simplicity, the Court will refer to these instruments collectively as the "DOT."

While living in the home, Young made numerous improvements to the Property including the addition of a privacy fence which he purchased from and had installed by Lowe's. He also corrected what he perceived were several fire hazards on the Property. (Ex. F, ECF No. 24-1, at 21.) Young testified that, among other things, he replaced a hotplate—which he claims had faulty wiring—with a new range and updated the home's refrigerator and dishwasher. He also installed several other new appliances and improvements including air conditioning units, kitchen lights, and a new kitchen sink. (*Id.*) According to his testimony, he made these changes to make the home safer and more comfortable for his family.

Less than two years after moving in, however, Young experienced a series of unfortunate life events, culminating in him moving out of the Property. In February 2017, Young and Tracey obtained an order in the Family Court of Mercer County, West Virginia, pursuant to which Young retained exclusive use of the Property. (Ex. E, ECF No. 24-1, at 18.) However, the order also provided that if Young vacated the Property, Tracey would then have exclusive use of the Property. (*Id.*) Young further testified that, around the same time, he lost his job, and in March 2017, he failed to pay the 2016 property taxes as well as the $2,000 principal payment. Additionally, Young issued a check to Tolbert in the amount of $1,500 on March 3, 2017 which was returned for insufficient funds. Tolbert pursued criminal charges against Young in the Magistrate Court of Mercer County in connection with that check. Young paid Tolbert the funds due, and the state court dismissed the criminal charges. Young testified that he soon thereafter vacated the Property and neither returned nor collected any further rental income.

In April 2017, Tolbert received a call from the tenant renting the smaller house on the Property informing him that Tracey and an adult male were removing appliances from the main house. (Ex. A, ECF No. 24-1, at 4.) The male assisting Tracey was not Young. Tolbert testified

4

that he subsequently conducted an inspection of the home in May at which time he observed damages such as broken or missing shingles and insulation, missing appliances, removed fixtures, and other minor damages including dog scratches on a door and cracks in tile. He also presented numerous supporting photographs. However, Young testified that many of the pictures depicted damages that did not exist when he left the home. Tolbert further acknowledged that he knew Young did not take the dishwasher from the home but could not testify as to who removed the remaining appliances. Tolbert intervened in the Youngs' domestic relations case in the Family Court of Mercer County in May 2017, and obtained an order from that court stating, "Tracey and James Young misrepresented the ownership status of the residence. They removed appliances which were the property of Larry Tolbert and to which they were not entitled. Accordingly Larry Tolbert should be allowed to pursue them for reimbursement of these appliances."[6] (Ex. 9, ECF No. 27, at 15.)

Thereafter, in late May 2017, Tolbert initiated a foreclosure sale on the Property.[7] On July 30, 2017, Tolbert filed a Civil Complaint against Young in the Magistrate Court of Mercer County, West Virginia, seeking damages for "$4,286.22 for breach of contract, $3,915.00 for removal, injury to or destruction of property, real or personal, including waste, [and] $1,525.00 for issuing worthless check." (Ex. 5, ECF No. 27, at 10.) The damages sought totaled $9,726.22, and Tolbert obtained a default judgment in that amount on October 2, 2017. (Exs. 5, 7, ECF No. 27, at 10, 12.) The order of judgment makes no findings as to how the judgment amount is allocated. It is simply for a lump sum.

---

[6] It is not clear to the Court who actually owned the appliances at issue. According to Tolbert, there was no contract of sale for the Property itemizing what property was conveyed, just a Note and Deed of Trust.

[7] This is another area where the Court has concern about Tolbert's pre-bankruptcy actions. Tolbert had his sister, who is not an attorney, act as trustee under the deed of trust to conduct the foreclosure sale. While that may not be problematic in and of itself, Tolbert was unable to state what he bid for the Property at the foreclosure sale, and he had no idea what, if any, credit Young received against his debt from the sale of the Property. He also did not know if an accounting of the sale was either filed or approved under West Virginia law.

5

Tolbert later filed the Civil Complaint against Young and Tracey that became the basis of this Adversary Proceeding, alleging that they owed $5,811.22 for breach of contract and issuance of a worthless check, and that they caused damages to the Property in the amount of $3,915. Tolbert seeks a determination that the damages arising out of the breach of the DOT and the check are non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as debts obtained by fraud and that the physical damages to the Property are non-dischargeable under § 523(a)(6) as debts for willful and malicious injury to property. Tolbert further contends that the Court should deny Young's discharge under 11 U.S.C. § 727(a)(4)(A) because Young made a false oath when he failed to schedule rental income from the second home on the Property on his bankruptcy petition and tax returns.

## CONCLUSIONS OF LAW

I.   **Tolbert's § 523(a)(2)(A) Claim**

Section 523(a)(2)(A) excepts from a debtor's discharge any debt "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A).

> In order to determine if that claim is non-dischargeable in bankruptcy, the party moving for the non-dischargeable determination must establish five elements:
>   (1) that the debtor made a misrepresentation or committed other fraud;
>   (2) that at the time, the debtor knew the conduct was fraudulent;
>   (3) that the debtor's conduct was with the intention and purpose of deceiving or defrauding the creditor;
>   (4) that the creditor relied on the debtor's representations or other fraud; and
>   (5) that the creditor sustained loss and damage as the proximate result of the representations or fraud.

*Van-Voegler v. Myrtle (In re Myrtle)*, 500 B.R. 441, 450 (Bankr. W.D. Va. 2013). As the challenging creditor, Tolbert has the burden of proving these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). Notably, breach of contract renders a debt non-dischargeable only when the debtor had a present intention at the time of signing not to

6

perform under the terms of the contract—a "mere inability or failure to perform is not, in itself, sufficient evidence of fraudulent intent [for purposes of § 523(a)(2)(A)]." *Ocean Equity Grp., Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 122 (Bankr. E.D. Va. 2010) (quoting *Thomas Somerville Co. v. Slaughter (In re Slaughter)*, Adv. No. 95–3023, 1995 WL 506827, at *2 (Bankr. E.D. Va. July 7, 1995)).  Tolbert alleges that Young engaged in fraud by issuing a worthless check, misrepresenting his ownership status over the Property, and by breaching the terms of the DOT, and thus argues the debt from the Civil Judgment should not be dischargeable. These arguments are without merit.

There is no merit to the fraud alleged in connection with the check.  Young advised he told Tolbert the check would not clear, and when it did not, he made it good.  Tolbert's argument to the contrary is not persuasive, and the Court finds that Tolbert failed to meet his burden of proof as to whether Young acted with an intent to deceive or whether Tolbert justifiably relied on this check.  Furthermore, Tolbert has suffered no damage.[8]  Accordingly, the Court finds no fraud, false pretenses, or misrepresentation justifying denial of discharge as to the bad check.

Tolbert next argues Young misrepresented the ownership status of the Property.  Tolbert never made clear what he believes constituted a misrepresentation on this point, much less one that resulted in damages or that should otherwise prevent Young's discharge.  Tolbert relies only on the 2017 civil order stating that Young and Tracey misrepresented their ownership of the Property. (Ex. 9, ECF No. 27, at 15.)  However, that order was completely without explanation, and Tolbert failed to present any other evidence of misrepresentation of ownership.  Merely asserting that "the [state court] order speaks for itself" does not establish by a preponderance of

---

[8] Upon examination from Young's counsel, Tolbert admitted that he received $1,500 in payment for the check on December 4, 2017 and did not provide Young a credit toward his debt in that amount when he sought a default judgment in state court.  Nonetheless, in response to the Court's question as to what amount of damages he suffered from the bad check, Tolbert answered "$1,500."

7

the evidence that Young made an intentional misrepresentation upon which Tolbert relied resulting in damages. *See M & M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146 (4th Cir. 1991) (finding that a default judgment provided an insufficient basis to deny discharge where state-court issues were never actually litigated). Tolbert construes a bare boned showing of misrepresentation as sufficient proof to justify exception to discharge, but the Court disagrees. In relying solely on the state court's order, Tolbert failed to meet his burden of proof on any element of § 523(a)(2)(A).[9]

Lastly, while Tolbert spent substantial time evidencing that Young breached the terms of the DOT by failing to make monthly payments and property tax payments, he failed to show that he did so with the requisite intent. It is clear that Young had no intention to breach the contract at the outset, but rather, his financial status necessitated it over time. Further, his divorce with Tracey and his subsequent loss of employment by March 2017 curtailed his ability to continue making payments. Additionally, Young testified that when he moved out, he believed that Tracey became responsible for the Property under the terms of the divorce decree, and that any payments missed after that point resulted from Young's understanding, albeit perhaps a misunderstanding, that he was no longer liable. This is nothing more than a simple breach of contract claim, and a breach of a contract, even an intentional breach, is not a fraud as contemplated by Section 523(a)(2)(A). *See Strum v. Exxon Co.*, 15 F.3d 327, 331 (4th Cir. 1994); *Staton Holdings, Inc. v. Mileski (In re Mileski)*, 416 B.R. 210, 225 (Bankr. W.D.N.C. 2009). Simply claiming fraud based on a state court default order that recites facts of nothing of the sort fails to satisfy the requisite burden of proof.[10]

---

[9] Tolbert further asserts that removing appliances from the Property also constituted misrepresentation. The Court believes it is more fitting to address this issue under the discussion of § 523(a)(6).

[10] Consistent with the Court's concerns here, the court in *Mileski* stated, "There are a couple of problems with this theory. The first is the dearth of evidence, or any discussion in the state record or in the Texas ruling suggesting that

8

Accordingly, the Court finds that Tolbert failed to show by a preponderance of the evidence that any of Young's actions justify denial of discharge under § 523(a)(2)(A).

## II.    Tolbert's § 523(a)(6) Claim

Tolbert additionally seeks exception to discharge for the physical damages to the Property under 11 U.S.C. § 523(a)(6), which excepts debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." As this Court has previously stated:

> For a debt to be found non-dischargeable under 11 U.S.C. § 523(a)(6), the creditor must establish by a preponderance of the evidence that the debtor's actions in incurring the debt were willful and malicious and that those actions led to injuries to the creditor's property or collateral. *Kawaauhau v. Geiger*, 523 U.S. 57, 60–61 (1998). Thus, there are three elements that must be proven: (1) that the debtor's actions caused an injury to the creditor's person or property; (2) that the debtor's actions were willful; and (3) that the debtor's actions were malicious.

*Pence*, 2017 WL 4685034 at *2. "[T]he Supreme Court has held that willfulness under § 523(a)(6) requires a showing of 'a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" *Id.* (citing *Kawaauhau*, 523 U.S. 57, 61 (1998) (emphasis in original)). Additionally, the Fourth Circuit defines malice as "an act causing injury without just cause or excuse." *Wooten*, 423 B.R at 130. Plaintiffs as a result must prove that debtors' injurious acts were deliberate—a mere showing of negligent upkeep or failure to maintain collateral is not sufficient for purposes of § 523(a)(6). *See Pence*, 2017 WL 4685034, at *3 (citing cases in which courts "have found that a debtor's failure to maintain rental property or

---

this was what Judge Montgomery meant by 'fraud in the parties dealings.' The Default Judgment itself does not specify how or when Mileski committed this fraud or exactly what were those dealings." *In re Mileski*, 416 B.R. 210, 226 (Bankr. W.D.N.C. 2009).

collateral, without more, is not enough to support a claim of nondischargeability under § 523(a)(6)").

In this Adversary Proceeding, Tolbert seeks a finding of nondischargeability with respect to the debts that arose from the damages to the Property in the amount specified in his Civil Complaint. (Ex. 5, ECF No. 27, at 10.) However, the evidence supports a finding that Young acted neither maliciously nor with willful intent to damage structures and items in the residence. Tolbert provided numerous exhibits depicting before and after photos of structures on the Property that reflected some minor damage. (Ex. 22, ECF No. 27). However, he provided no evidence indicating that Young intended to injure the Property or make changes to the Property without just cause. The evidence indicates that minor damages, including scuff marks, scratches, broken tiles, and holes and screws in the wall where items had been hung, were a result of mere wear and tear or negligent upkeep. Additionally, damage to the roofing resulted from severe weather incidents that were out of Young's control or, at worst, a failure to maintain the Property to Tolbert's standards. While some of these damages could have been avoided, the Court does not believe they were intentional nor malicious, but rather they resulted from negligent or even poor upkeep of the Property which is insufficient under § 523(a)(6). Tolbert argues that damages related to poor maintenance breached the parties' agreement such that Young should remain liable; however, that is not the legal standard under § 523(a)(6). As this Court stated in *Horton*, "[a] simple breach of contract . . . , even if intentional, would not give rise to a § 523(a)(6) violation." *Horton*, 2018 WL 4220786, at *3 (quoting *Wooten*, 423 B.R. at 130).

Second, there is no evidence that Young is the party responsible for the missing or stolen items. Young testified to the Court that he left everything alleged to be missing on the Property when he vacated it in March 2017, and when showed pictures of missing items such as the

10

bathroom vanity, Young testified that they had been there at the time he left.  Tolbert provided no evidence to the contrary and, in fact, admitted that he was aware Young was not present at the home when Tracey and another individual were seen removing the dishwasher, even though this event was the main basis upon which Tolbert supported his contention that Young had intentionally removed property.  Such evidence does not provide any basis to implicate Young.  As to the other missing or altered property, such as the missing hot plate and exhaust hood in the kitchen, Young admitted to intentionally removing these, though his intentions were clearly not malicious; he credibly testified that these appliances had old and faulty wires that were fire hazards, and he removed them for the safety of his children.  Absent a showing that Young acted maliciously with an intent to injure the Property, Tolbert cannot meet the requirements of § 523(a)(6).  The Court finds that Tolbert failed to provide sufficient evidence that Young engaged in willful or malicious conduct.  Accordingly, the Court will deny Tolbert's requested relief under § 523(a)(6).

### III.    Tolbert's § 727(a)(4)(A) Claim

Tolbert further requests the Court deny Young's discharge under § 727(a)(4)(A), alleging that Young made a false oath on his bankruptcy schedules and tax forms by omitting the rental income he received in 2016.  Under 11 U.S.C. § 727(a)(4)(A), a court may deny a debtor's discharge if the debtor knowingly and fraudulently made a false oath.  "To run afoul of this provision, 'the debtor must have made a statement under oath which he knew to be false, . . . he must have made the statement willfully, with intent to defraud,' and the statement 'must have related to a material matter.'"  *Robinson v. Worley*, 849 F.3d 577, 583 (4th Cir. 2017) (quoting *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249, 251 (4th Cir. 1987)).  "A misstatement is material if it is 'relevant to the debtor's business transactions, estate and assets.'"  *Id.* at 587

(quoting *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 251 (4th Cir. 1994)).  Additionally, "[d]ischarge will not be denied when the untruth was the result of mistake or inadvertence." *McClain v. Parker (In re Parker)*, 531 B.R. 103, 108 (Bankr. E.D.N.C. 2015) (citing *In re Parnes*, 200 B.R. 710, 714 (Bankr. N.D. Ga. 1996)).

While Young admitted he failed to include the rental income he received in 2016 on his schedules, he testified to the Court that he had genuinely forgotten about it and had no intention of defrauding his creditors.  Additionally, he testified that his wife had been filing his tax returns for him since 2006, and any failure to list this income had been an oversight when he reviewed his returns.  The Court finds Young's testimony credible, and Tolbert did not introduce any evidence to persuade the Court otherwise.

Moreover, Young testified that he stopped receiving rental income at the end of 2016.  Considering he filed his petition in late 2018, the Court does not believe the inadvertent omission was, in the circumstances of this case, a material misstatement, and there is no indication the Trustee's actions would have been any different had this income been scheduled.  Merely pointing to the fact that the information was initially omitted without any showing of intent to defraud or materiality is insufficient to prove by a preponderance of the evidence that the Court should deny Young a discharge under § 727(a)(4)(A).

## **CONCLUSION**

For the foregoing reasons, this Court finds that the debts owed by the Debtor, James Young, to the Plaintiff, Larry Tolbert, are dischargeable and that his discharge should not be denied.

A separate Order will be entered contemporaneously herewith.